IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BUCKS COUNTY COMMUNITY COLLEGE,<br><br>Plaintiff,<br><br>v.<br><br>AUGUSOFT, INC.,<br><br>Defendant. | Case No. 2:14-cv-07143-JP<br><br>**Augusoft, Inc.'s Answer to Complaint and Counterclaim** |

Augusoft, Inc. ("Augusoft") answers the Bucks County Community College Complaint as follows:

## GENERAL DENIAL

Augusoft denies each and every allegation, matter, or thing contained in the Complaint that is not expressly admitted, qualified, or answered herein.

## JURY DEMAND

Augusoft demands a jury trial on all issues so triable.

## PARTIES

1. As to Paragraph 1, Augusoft is without sufficient information to admit or deny the allegations and therefore denies the same.

2. As to Paragraph 2, Augusoft admits that it is a privately held Minnesota corporation having an address at 8441 Wayzata Blvd., Minneapolis, MN. Augusoft admits that it has conducted business in Pennsylvania with Pennsylvania-based Plaintiff. Augusoft avers that whether the specific statutes referenced in paragraph 2 apply is a question of law, to which no response is required.

## JURISDICTION AND VENUE

3. As to Paragraph 3, Admitted.

4. As to Paragraph 4, Admitted.

5. As to Paragraph 5, Admitted.

6. As to Paragraph 6, Admitted.

7. As to Paragraph 7, Augusoft admits that it developed and maintains a SaaS enrollment management system called Lumens, which was designed by Augusoft for institutions offering continuing education.

8. As to Paragraph 8, Augusoft admits that it advertises Lumens, and that Exhibit A is a written document that speaks for itself.

9. As to Paragraph 9, Augusoft admits that it advertises Lumens, and that Exhibit A is a written document that speaks for itself.

MANAGEMENT SYSTEMS

10. As to paragraph 10, Augusoft incorporates its responses to paragraphs 1 through 9.

11. As to Paragraph 11, Admitted.

12. As to Paragraph 12, Admitted.

13. As to Paragraph 13, Augusoft is without sufficient information to admit or deny the allegations and therefore denies the same.

14. As to Paragraph 14, Augusoft is without sufficient information to admit or deny the allegations and therefore denies the same.

15. As to Paragraph 15, Denied, except that Exhibit A speaks for itself.

16. As to Paragraph 16, Admitted and affirmatively stated that Plaintiff was given a discount as a recognition that Plaintiff was to be an early adopter of a Lumens integration with Colleague.

17. As to Paragraph 17, Admitted.

18. As to Paragraph 18, Augusoft Admits only that Exhibit B appears to be an accurate copy of a contract between Plaintiff and Augusoft and that it speaks for itself.

19. As to Paragraph 19, Augusoft Admits only that Exhibit C appears to be an accurate copy of a contract between Plaintiff and Augusoft and that it speaks for itself.

20. As to Paragraph 20, Augusoft Admits only that Exhibit D appears to be an accurate copy of a contract between Plaintiff and Augusoft and that it speaks for itself.

21. As to Paragraph 21, Denied.

22. As to Paragraph 22, Admitted.

23. As to Paragraph 23, Denied.

**INTEGRATION PROBLEMS**

24. As to Paragraph 24, Augusoft incorporates its responses to paragraphs 1 through 23.

25. As to Paragraph 25, Denied.

26. As to Paragraph 26, Admitted.

27. As to Paragraph 27, Augusoft admits only that July 1, 2013 was at one time a target date, otherwise denied.

28. As to Paragraph 28, Admitted.

29. As to Paragraph 29, Denied.

30. As to Paragraph 30, Augusoft admits only that in April 2013 user training sessions were placed on hold by agreement between the parties.

31. As to Paragraph 31, Augusoft admits only that the system was not fully operational on July 1, 2013.

32. As to Paragraph 32, Augusoft admits only that the parties agreed to a new target schedule wherein September 2, 2013 was a target date.

33. As to Paragraph 33, Augusoft admits that by July 10, 2013 the user acceptance testing was not completed, and affirmatively states that Plaintiff failed to provide a user acceptance testing environment until July 17, 2013, making it impossible to complete user acceptance testing by July 10, 2013.

34. As to Paragraph 34, Denied.

35. As to Paragraph 35, Augusoft admits only that in August 2013, the parties discussed the project, decided to continue the project, discussed having a project schedule, and discussed that Augusoft would provide Plaintiff with some subscription fee credits.

36. As to Paragraph 36, Augusoft admits only that it sent an updated project plan with target dates for user acceptance testing and go-live.

37. As to Paragraph 37, Admitted.

38. As to Paragraph 38, Denied.

39. As to Paragraph 39, Admitted.

40. As to Paragraph 40, Admitted.

41. As to Paragraph 41, Denied.

42. As to Paragraph 42, Augusoft admits on that on December 15, 2013 Paul VanderWaal corresponded with Plaintiff and that the correspondence is a written document that speaks for itself.

43. As to Paragraph 43, Admitted.

44. As to Paragraph 44, Augusoft is without sufficient information to admit or deny the allegations and therefore denies the same.

45. As to Paragraph 45, Admitted.

46. As to Paragraph 46, Admitted.

47. As to Paragraph 47, Admitted.

48. As to Paragraph 48, Admitted.

49. As to Paragraph 49, Augusoft admits only that it provided a demonstration to Plaintiff on 4/29/2014 and at that time the system was ready for user acceptance testing.

50. As to Paragraph 50, Admitted.

51. As to Paragraph 51, Admitted.

52. As to Paragraph 52, Augusoft admits that during user acceptance testing Plaintiff found aspects of the system that Plaintiff asked Augusoft to change, but this is normal as part of any software project testing process.

53. As to Paragraph 53, Denied.

54. As to Paragraph 54, Augusoft admits only that at one point a target date for completion of user testing and acceptance was May 26, 2014.

55. As to Paragraph 55, Denied.

56. As to Paragraph 56, Augusoft admits that Plaintiff stopped the project before it was finished.

57. As to Paragraph 57, Admitted that Plaintiff took those actions but denies that such termination was proper.

## COUNT I - BREACH OF CONTRACT

58. As to Paragraph 58, Augusoft incorporates its responses to paragraphs 1 through 57.

59. As to Paragraph 59, Augusoft admits only that Plaintiff and Augusoft mutually discussed the projects timelines and targets until the Plaintiff unilaterally terminated the project.

60. As to Paragraph 60, Denied.

61. As to Paragraph 61, Denied.

62. As to Paragraph 62, Denied.

63. As to Paragraph 63, Denied.

64. As to Paragraph 64, Denied.

65. As to Paragraph 65, Denied.

## COUNT II – INTENTIONAL MISREPRESENTATION / FRAUD

66. As to Paragraph 66, Augusoft incorporates its responses to paragraphs 1 through 66.

67. As to Paragraph 67, Augusoft admits only that it advertises Lumens and that Exhibit A is a written document, which speaks for itself.

68. As to Paragraph 68, Denied.

69. As to Paragraph 69, Denied.

70. As to Paragraph 70, Augusoft admits only that it advised Plaintiff that it could integrate Lumens with Plaintiff's Colleague system.

71. As to Paragraph 71, Denied.

72. As to Paragraph 72, Denied.

73. As to Paragraph 73, Denied.

74. As to Paragraph 74, Augusoft admits only that as part of the contractual relationship between Augusoft and Plaintiff, Plaintiff provided some resources for the project.

75. As to Paragraph 75, Denied.

76. As to Paragraph 76, Denied.

77. As to Paragraph 77, Denied.

## COUNT III – NEGLIGENT MISREPRESENTATION

78. As to Paragraph 78, Augusoft incorporates its responses to paragraphs 1 through 77.

79. As to Paragraph 79, Denied.

## COUNT IV – UNJUST ENRICHMENT

80. As to Paragraph 80, Augusoft incorporates its responses to paragraphs 1 through 79.

81. As to Paragraph 81, Admitted.

82. As to Paragraph 82, Admitted.

83. As to Paragraph 83, Augusoft is without sufficient information to admit or deny the allegations and therefore denies the same.

84. As to Paragraph 84, Augusoft admits only that it did not have access to Plaintiff's implementation of Colleague when Plaintiff contracted with Augusoft.

85. As to Paragraph 85, Augusoft admits only that as part of the contractual relationship between Augusoft and Plaintiff, Plaintiff provided some resources for the project.

86. As to Paragraph 86, Denied.

87. As to Paragraph 87, Denied.

88. As to Paragraph 88, Denied.

89. As to Paragraph 89, Denied.

90. As to Paragraph 90, Denied.

Augusoft's affirmative defenses are listed below. Augusoft reserves the right to add additional affirmative defenses consistent with the facts discovered in the case.

First Affirmative Defense

Plaintiff's Complaint fails, in whole or in part, to state a claim on which relief can be granted. Plaintiffs tort based claims are barred as described in eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10 (Pa. Super. 2002).

Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the Plaintiff's prior material breaches.

Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by their failure to perform as required by contract or act in good-faith in their performance their contractual obligations.

Fourth Affirmative Defense

Plaintiff's claims are barred by its own assumption of risk, including but not limited to the risk that Augusoft would be unable to perform.

Fifth Affirmative Defense

Plaintiff failed to mitigate its damages.

Sixth Affirmative Defense

Plaintiff's damages are limited by contract.

Seventh Affirmative Defense

Plaintiff's claims and causes of action are barred, in whole or in part, by the doctrine of laches, estoppel, or waiver.

Eighth Affirmative Defense

Plaintiff's claims and causes of action are barred, in whole or in part, under the doctrine of set-off or recoupment.

Ninth Affirmative Defense

Plaintiff's claims and causes of action are barred, in whole or in part, for failure of consideration.

Tenth Affirmative Defense

Plaintiff's claims and causes of action are barred, in whole or in part, under the doctrine accord and satisfaction.

**PRAYER FOR RELIEF**

WHEREFORE, Augusoft prays for relief as follows:

1. Plaintiff's Complaint and the allegations therein be dismissed with prejudice;

2. That Augusoft be granted such other further relief as the Court may deem just and proper.

****

**DEFENDANT'S COUNTERCLAIMS**

Augusoft, Inc. ("Augusoft") asserts the following counterclaim against Bucks County Community College ("BCCC"):

## JURY DEMAND

Augusoft demands a jury trial on all issues so triable.

## THE PARTIES

1. Augusoft is a Minnesota corporation, with a principle place of business in Minneapolis, MN.

2. BCCC is a community college located in Newtown, Pennsylvania.

## JURISDICTION AND VENUE

3. The events giving rise to this counterclaim took place in Pennsylvania and the contract between the parties specifies that any dispute between the parties will be governed by the laws of Pennsylvania.

## FACTS

4. On December 20, 2012, Augusoft and BCCC executed and agreed upon the order that is attached to BCCC's Complaint as Exhibit B, which is fully incorporated herein.

5. BCCC agreed to Augusoft's Standard Terms and Conditions, as amended between the parties. Such terms and conditions are attached to BCCC's Complaint as Exhibits C and D and are fully incorporated herein.

6. As part of these agreements, and as shown in Exhibit B, BCCC was given an "Early Adopter Discount" for Augusoft's license fee. Augusoft offered this Early Adopter Discount as a waiver of Augusoft's standard integration license fee in recognition of the fact that Augusoft's Lumens product had not, at that time, been integrated with BCCC's ERP software, Colleague.

7. BCCC agreed to provide resources for the integration and testing of Lumens on BCCC's ERP system.

8. In or around March 2013, BCCC for the first time identified that it required types of instructor payments not supported by Lumens at that time. This was not an issue contemplated in December 2012 when the integration was first contemplated. Augusoft informed BCCC that the development of functionality to provide the level of instructor payment desired by BCCC ("the Flexible Schedules project") was on Augusoft's development road map but had not been anticipated as part of the integration project. The Flexible Schedules project was one example of BCCC requesting increased functionality from what was originally contemplated.

9. BCCC's addition of project scope and functionality could not be ready by July 1, 2013, an initial target "go live date," as BCCC desired. Augusoft offered a phased approach for implementation of this unrelated project, but the phased implementation was rejected by BCCC.

10. Starting with the Flexible Schedules project, and thereafter, Richard Hartwell (BCCC's representative) repeatedly made statements expressing that Lumens was to replicate ERP functionality. This, however, was never promised by Augusoft. The purpose of Lumens integration was to migrate data collected in Lumens to Colleague to allow the BCCC to maintain existing reporting requirements as set up in Colleague. At various times throughout the project there was a need to add variables to Lumens at a minimum level to support the creation of associated records in Colleague.

11. In addition to requesting added functionality, throughout the project, BCCC caused a number of delays by failing to provide, or delaying access to, a working user acceptance test environment.

12. BCCC caused additional project delays by refusing to test the product in concurrent phases.

13. For example, Richard Hartwell (BCCC's representative) expressly designed BCCC's testing to address only one set of integration interfaces per week. Hartwell would not allow testing of other unrelated interfaces until resolution and retesting had been completed on any particular issue. And most testing occurred only during the weekly project meeting.

14. Moreover, many of the items BCCC addressed as "broken" issues were in reality training items, and the system was working as designed.

15. Augusoft delivered the integrated product to BCCC on April 21, 2014 per the mutually agreed upon project plan, however BCCC delayed initiating testing for two weeks, eating into the time allotted in the plan.

16. As another example, Hartwell admitted having a difficult time getting internal users to complete their test cases. Hartwell admitted to Paul VanderWaal (Augusoft's representative) that BCCC's users were resisting a change in software. Hartwell repeatedly and throughout the project made the statement that "we [BCCC] have a system that works" (meaning Colleague), and that "we BCCC don't need Lumens."

17. By June of 2014, Hartwell was intentionally slowing the testing of the product so that the testing could not be completed within the desired timeframe.

18. Despite Augusoft's repeated attempts to work with BCCC to implement a fully functioning system, BCCC terminated the project and initiated a lawsuit against Augusoft.

**Count I – Breach of Contract (Covenant of Good Faith & Fair Dealing)**

19. The proceeding paragraphs are incorporated by referenced.

20. The relationship between Augusoft and BCCC is governed by contract.

21. Augusoft did all or was doing all, or substantially all, of the significant things that the contract required it to do.

22. BCCC unfairly interfered with Augusoft's right to receive the benefits of the contract.

23. Augusoft was harmed by BCCC's conduct in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Augusoft requests that the following relief:

1. Entering judgment in favor of Augusoft and against BCCC, in an amount to be determined at trial.

2. Entering judgment in favor of Augusoft and against BCCC for the attorneys' fees, costs, and disbursements incurred by the Augusoft in this action; and

3. For such other relief as the Court may deem just and equitable.

Respectfully submitted,

Dated: December 23, 2014

**FISHER ZUCKER, LLC**

By: /s/ Jeffrey A. Zucker
Jeffrey Zucker, Esquire
Attorney ID No. 71234
21 South 21st Street
Philadelphia, PA 19103
215-825-3100
jzucker@fisherzucker.com

**GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.**
Loren L. Hansen
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone: (612) 632-3389
Fax: (612) 632-4389
Loren.Hansen@gpmlaw.com

***ATTORNEYS FOR DEFENDANT, AUGUSOFT, INC.***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| BUCKS COUNTY COMMUNITY COLLEGE,<br><br>Plaintiff,<br><br>v.<br><br>AUGUSOFT, INC.,<br><br>Defendant. | Case No. 2:14-cv-07143-JP |
|---|---|

**CERTIFICATE OF SERVICE**

I, Jeffrey A. Zucker, Esquire, attorney for defendant, Augusoft, Inc., hereby certify that on this 24th day of December, 2014, a true and correct copy of defendants' Answer to Complaint and Counterclaim was served on the following via Electronic Case Filing Notice (ECF) and U.S. First Class Mail:

Steven M. Jones
Begley, Carlin & Mandio, LLP
680 Middletown Boulevard
P.O. Box 308
Langhorne, Pennsylvania 19047-0308
sjones@begleycarlin.com
*Attorneys for Plaintiff,*
*Bucks County Community College*

/s/ Jeffrey A. Zucker
Jeffrey A. Zucker